+

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

STEPHANIE ELISE CALLAHAN,

    Plaintiff,

  v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

_____/

Case No. 1:22-cv-00339-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.  INTRODUCTION

  Plaintiff Stephanie Elise Callahan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  BACKGROUND

  Plaintiff was born on August 28, 1966, has at least a high school education, and previously worked as a pharmacy technician. (Administrative Record ("AR") 31, 32, 116, 134, 151, 297, 302, 303, 357, 398.) Plaintiff filed a claim for DIB payments on February 13, 2019, alleging she became

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

disabled on October 7, 2018, due to sciatica, nephropathy, migraine syndrome, diabetes, diverticulitis of the colon, short term memory loss, depression, and stress.  (AR 277, 301, 357, 398.)

**A.**  **Relevant Evidence of Record[2]**

In February 2017, licensed clinical psychologist Aimee Sanchez, Ph.D. performed a comprehensive psychological examination of Plaintiff.  (AR 722–31.)  She observed Plaintiff to be appropriately dressed and wearing clean clothing.  (AR 722.)  Plaintiff's attitude and degree of cooperation was deemed "adequate" for the exam, and the reliability of Plaintiff's history was deemed "good."  (AR 722.)  She complained of poor attention and concentration, difficulties with multiple-step commands, forgetfulness, mental confusion, and depression.  (AR 723.)  Plaintiff reported that she: lives with relatives; can take care of self-dressing, self-bathing, and personal hygiene; is able to drive; is able to pay bills or handle cash appropriately; is able to go out alone; can focus attention during the interview; has no difficulty completing household tasks; and has no difficulty making decisions.  (AR 725.)  Plaintiff's relationships with family and friends were reported to be "good."  (AR 725.)  She reported "receiving prescribed medication for management of mood symptoms."  (AR 724.)

Upon mental examination, Dr. Sanchez found Plaintiff's thought processes were coherent and organized, and her thought content not delusional, bizarre, psychotic.  (AR 726.)  Plaintiff exhibited no homicidal or paranoid ideation and denied hallucinations.  (AR 726.)  Her mood appeared to be dysphoric with normal affect congruent with through content.  (AR 726.)  Dr. Sanchez described Plaintiff as "continually tearful."  (AR 726.)  Her speech was normal, and she was alert to time, place, person, and purpose of the evaluation.  (AR 726.)  Dr. Sanchez noted that Plaintiff appeared to be of low average intelligence.  (AR 726.)  Her fund of knowledge was appropriate, with intact abstract thinking, judgment, and insight.  (AR 727.)  Dr. Sanchez found Plaintiff had intact immediate recall and recalled two out of three objects on delay recall.  (AR 727.)  She was able to perform serial sevens and simple calculations.  (AR 727.)

Dr. Sanchez assessed Plaintiff with major depressive disorder.  (AR 729.)  According to Dr.

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Sanchez, results of Plaintiff's evaluation "indicate that she may be experiencing primarily mood symptoms and anxiety which may interfere with her intellectual and cognitive functioning."  (AR 730.)  Plaintiff's performance on tasks related to working memory and average processing speed was "borderline." (AR 730.)  Plaintiff's prognosis was deemed to be fair.  (AR 730.)

Dr. Sanchez opined that Plaintiff was mildly impaired as follows: in the ability to do detailed and complex instructions; the ability to relate and interact with co-workers and public; the ability to maintain concentration, attention, persistence, and pace; the ability to associate with day-to-day work activity, including attendance and safety; the ability to accept instructions from supervisors; the ability to maintain regular attendance in the work place and perform work activities on a consistent basis; and the ability to perform work activities without special or additional supervision.  (AR 730–31.)  Dr. Sanchez further opined that Plaintiff had no impairment in the ability to understand, remember, and carry out simple one or two-step job instructions, and she was capable of handling funds.  (AR 731.)

From November 2018 to January 2019, Plaintiff complained of intermittent left lower quadrant pain due to diverticulitis.  (AR 766, 1032, 1034.)  Plaintiff underwent surgery in February 2019 to remove the diseased segment of her colon.  (AR 787, 924, 952–57.)  Later that month, Plaintiff reported that her diverticulitis pain was "completely resolved." (AR 925.)  She reported a recurrence of pain in March 2019, but it had improved in May 2019 and was associated with constipation.  (AR 962, 969.)  In September 2019, Plaintiff denied any fevers, chills, nausea, vomiting, diarrhea, or constipation. (AR 1441.)

Plaintiff presented for an internal medicine evaluation in January 2020 by Roger Wagner, M.D. (AR 1566–71.)  She reported that she cooks, cleans, drives, shops, performs her own activities of daily living without assistance and does some walking for exercise.  (AR 1567.)  She reported that she has "no symptomatology" of her diverticulitis.  (AR 1567.)

In January 2020, state agency physician Pamela Hawkins, Ph.D., reviewed the record and determined that Plaintiff's medically determinable mental impairments of "depressive, bipolar, and related disorders" were not severe.  (AR 143–44.)  In April 2020, state agency physician H. Amado, M.D., reviewed the record on reconsideration and affirmed Dr. Hawkins' findings that Plaintiff had

no severe mental impairments.  (AR 160–61.)

Plaintiff presented for a psychiatric evaluation by Mary K. McDonald, Ph.D., in October 2020. (AR 1588–95.)  She was casually dressed, with poor hygiene and grooming.  (AR 1591.)  She was oriented to person, place, and time, and her memory was "clear and functioning."  (AR 1591.)  Dr. McDonald found that Plaintiff's ability to understand and recall work-related instructions was "unimpaired," and her judgment and insight were "excellent."  (AR 1591–92.)  Plaintiff's thought process and speech were "clear and well organized" and her concentration and attention were "excellent."  (AR 1592.)  Dr. McDonald noted Plaintiff's affect was "flat" and her mood "clinically depressed."  (AR 1592–93.)  According to Dr. McDonald, Plaintiff "presents with clear signs of depression and anxiety that appear to be based on her medical issues but also due to physical abuse and a long history of traumatic stress beginning in childhood," and she diagnosed Plaintiff with "Post-Traumatic Stress Disorder" and "Major Depressive Disorder recurrent without psychotic features." (AR 1593.)  Her "prognosis . . . in terms of her ability to work" was deemed "poor."  (AR 1593.)  Dr. McDonald opined that Plaintiff was moderately impaired her ability to: understand and remember detailed instructions; maintain attention and concentration for extended periods; accept instructions from supervisors and respond appropriately to criticism; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; function independently and sustain an ordinary routine without special supervision; complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace; interact with coworkers and the general public; and withstand the stress of a routine workday and deal with various changes in the work setting.  (AR 1594–95.)  Dr. McDonald also opined that Plaintiff was mildly impaired in her ability to understand, remember, and carry out very short and simple instructions. (AR 1594.)

**B.      Plaintiff's Statements**

In May 2018, Plaintiff completed an adult function report.  (AR 320–28.)  Plaintiff reported that she is "always in pain," she has swelling in her hands, and she "can't manage [her] bowel movements."  (AR 320.)  She also reported "balance issues."  (AR 321.)  When asked to describe what she does from the time she wakes until she goes to bed, Plaintiff reported she wakes up, wakes

her kids up, prepares breakfast, cleans house, prepares dinner, makes sure the kids have completed their homework, and puts the kids to bed.  (AR 321.)  She has disturbed sleep due to pain and feels "anxious, depressed, [and] stressed."  (AR 321.)  Plaintiff reported that she needs help putting on her shoes and socks and that she gets "exhausted at times" while bathing.  (AR 321.)  She needs reminders to take medication.  (AR 321.)

Plaintiff prepares simple meals daily, loads and unloads the dishwasher, and does "light housecleaning."  (AR 322.)  She reported that she cannot lift and that it hurts to bend, squat, and twist. (AR 323.)  She can go out alone and shops in stores twice per week.  (AR 323.)  Plaintiff reported using "automatic bill pay" because she forgets to pay bills.  (AR 323.)  She spends time with others, and attends church and her children's sports games.  (AR 324.)  According to Plaintiff, she has trouble "thinking of words" and is "not good at completing tasks" due to a lack of concentration  (AR 327.)

Plaintiff completed another adult function report in August 2019.  (AR 378–85.)  She complained of constant pain in her back and legs and that her feet and hands hurt after 30 minutes of use.  (AR 378.)  She also stated she has confusion and forgetfulness due to diabetes.  (AR 386.) Plaintiff stated she prepares simple meals, folds laundry, goes out alone, drives, uses public transportation, shops for groceries, and handles her funds.  (AR 380–81.)

## C.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on January 23, 2020, and again on reconsideration on April 30, 2020.  (AR 180–83, 187–92.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 201–215.)  The ALJ conducted a hearing on April 23, 2021.  (AR 40–70.)  Plaintiff appeared at the hearing with her attorney and testified as to her alleged disabling conditions.  (AR 46–58.)

### 1.    Plaintiff's Testimony

Plaintiff testified that her health issues "kept getting worse" as of October 2018, when she was hospitalized for diverticulitis.  (AR 47.)  She testified that she still has "issues and flare ups" that cause pain about three times per year, which is made worse by stress.  (AR 47, 54, 55.)  Plaintiff testified that she has bowel problems and that she has leakage if she tries to pick up anything heavier than five pounds.  (AR 54.)  According to Plaintiff, she has neuropathy in her hands, arms, and legs, causing

numbness.  (AR 55–56.)

She drives short distances and must take a half-hour break after driving for one hour.  (AR 47.)  Plaintiff testified that she could walk a block before stopping, with a cane, and that it takes her half an hour.  (AR 50, 53.)  She could sit for an hour and a half before needing to change positions.  (AR 50.)

Plaintiff stated she lives with her cousin.  (AR 48.)  She has two children, whom she sees every other weekend and on Wednesdays.  (AR 48.)  Plaintiff testified she completed high school.  (AR 48.)  She takes Lexapro for depression.  (AR 52.)

**2.    Vocational Expert's Testimony**

A Vocational Expert ("VE") also testified at the hearing that Plaintiff had past work as a pharmacy technician, Dictionary of Operational Titles (DOT) code 074.382-010, which was light exertional work per the DOT, medium exertional work as performed, with a specific vocational preparation (SVP)[3] of 3.  (AR 60.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work experience and posed a series of hypotheticals about this person.  (AR 60–62.)  The VE was to assume this person can perform work at the light exertional level with the following additional limitations: occasionally pushing or pulling with the bilaterally lower extremities; no climbing ladders, ropes or scaffolds; occasionally climbing ramps or stairs; occasionally kneeling, stooping, crouching, or crawling; may require a cane for long distances and for occasional balancing on uneven terrain; frequent fingering or feeling; must avoid even moderate exposure to unprotected heights and dangerous moving machinery.  (AR 60.)  The VE testified that such a person could perform Plaintiff's past work per the DOT but not as performed, but they could perform jobs in the national economy, such as information clerk, DOT code 237.367-018, which is light work, with an SVP of 2; counter clerk, DOT code 249.366-010, light work, with an SVP of 2; and usher, DOT code 344.677-014, light work, with an SVP of 2.  (AR 61.)

The ALJ asked the VE, in a second hypothetical, to consider an individual with the same

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

limitations as set forth in the first hypothetical, but with frequent pushing and pulling with the bilateral lower extremities.  (AR 61.)  The VE testified that such a person could perform Plaintiff's past work per the DOT but not as performed, but that they could perform the jobs previously identified.  (AR 61–62.)  The VE further testified that off task behavior is not allowed more than 15 percent of the work time, i.e., time outside of the regularly scheduled breaks, and absenteeism is not allowed more than one full day per month or no more than two portions of a workday.  (AR 62.)

In a third hypothetical, Plaintiff's attorney asked the VE to consider an individual with the same limitations as set forth in the first hypothetical, but with occasional handling and fingering instead of frequent.  (AR 65.)  The VE testified that such a person could not perform Plaintiff's past work, but could perform the jobs of counter clerk and usher.  (AR 65.)  Plaintiff's attorney asked, in a fourth hypothetical, whether the VE's previously identified jobs would be available for the third hypothetical person who needed a cane to ambulate, and the VE responded that they would.  (AR 67.)  In a final hypothetical, Plaintiff's attorney asked whether the previously identified jobs would be available if the hypothetical person had to alternate between sitting and standing every hour for 10 minutes, and the VE testified that neither the counter clerk nor usher would be available.  (AR 68.)

**D.     The ALJ's Decision**

In decision dated May 5, 2021, the ALJ found that Plaintiff not disabled.  (AR 20–33.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 23–33.)  The ALJ decided that Plaintiff last met the insured status requirements of the Act on June 30, 2019, and she had not engaged in substantial gainful activity during the period from her alleged onset date of October 7, 2018, through her date last insured of June 30, 2019 (step one).  (AR 23.)  At step two, the ALJ found Plaintiff's following impairments to be severe: diverticulitis; right breast cancer, in remission; diabetes mellitus; obesity; degenerative disc disease; and arthropathies.  (AR 23–26.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 26–27.)

1    The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

2   assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to

3   step four, we assess your residual functional capacity . . . . We use this residual functional capacity

4   assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ

5   determined that Plaintiff had the RFC:

6        to perform light work as defined in 20 CFR [§] 404.1567(b) except with the following
         additional limitations.  [Plaintiff] could frequently push and pull with the bilateral
7        lower extremities.  She could not climb ladders, ropes, or scaffolds; occasionally climb
         ramps and stairs, kneel, stoop, crouch, or crawl; and may require the use of a cane for
8        long distances and for occasional balancing on uneven terrain.  She could frequently
         finger or feel.  She must avoid even moderate exposure to unprotected heights and
9        dangerous machinery

10

11   (AR 27–31.)   Although the ALJ recognized that Plaintiff's impairments "could reasonably be

12   expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not

13   entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 29.)  The

14   ALJ determined that, given her RFC, Plaintiff was not disabled because she was able to perform her

15   past relevant work of pharmacy technician as generally performed (step four).  (AR 31.)  The ALJ

16   also made the alternative finding that Plaintiff could perform a significant number of other jobs in the

17   local and national economies, specifically information clerk, counter clerk, and usher (step five).  (AR

18   32–33.)  The ALJ concluded Plaintiff was not disabled at any time from October 7, 2018, the alleged

19   onset date, through January 30, 2019, the date last insured.  (AR 33.)

20    Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review

21   on February 2, 2022.  (AR 1–6.)  Therefore, the decision became the final decision of the

22   Commissioner.  20 C.F.R. § 404.981.

23   ///

24

---

25   [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
     setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II
26   & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A.
     July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's
27   medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must
     consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of
28   symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec.
     Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

## III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the

Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ committed harmful error in failing to consider her mental health impairments severe at step two by improperly discounting the opinion of examining psychologist Dr. McDonald.  (*See* Doc. 12 at 7–11; Doc. 15 at 2–3.)  Plaintiff further contends that the ALJ erred in their consideration of her subjective complaint testimony.  (*See* Doc. 12 at 11–15.)

The Court disagrees with Plaintiff's allegations of error and shall affirm the ALJ's decision.

### A.   The ALJ Did Not Err at Step Two

#### 1.   Legal Standard

At step two of the sequential evaluation, the ALJ determines which of Plaintiff's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id*. An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims.  It is not meant to identify the impairments

11

that should be taken into account when determining the RFC.") (internal citations omitted).  The plaintiff bears the burden of proof at step two to show that an impairment qualifies as severe.  *Bowen*, 482 U.S. at 146 n.5.

**2.      Analysis**

In support of her argument that the ALJ erred at step two by failing to deem Plaintiff's mental impairments severe, Plaintiff relies solely on the limitations opined by psychiatrist Dr. McDonald. (*See* Doc. 12 at 7–8.)

**a.      Medical Opinion Evidence Generally**

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id*. § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. McDonald's opinion.

### b.    Dr. McDonald's Opinion

In weighing Dr. McDonald's opinion related to Plaintiff's mental functioning, the ALJ reasoned as follows:

1

2   The undersigned considered the opinion of Dr. McDonald, but does not find the opinion persuasive.  Dr. McDonald did not examine [Plaintiff] until October 2020, over a year after the date last insured and she does not have a treating relationship with the claimant.  She opined that [Plaintiff] would have some moderate limitations in performing mental work activities, but the opinion is not consistent with the evidence during the time period being adjudicated, which did not shown [sic] any significant mental abnormalities.  Additionally, it is not entirely supported by her own examination findings, where [Plaintiff] had excellent judgment and insight, excellent concentration and attention, intact memory, was cooperative, and made excellent eye contact. (Exhibit B29F).  Therefore, the opinion is not persuasive.

3

4

5

6

7   (AR 25.)

8       Plaintiff first asserts that the ALJ "discounted Dr. McDonald's opinion because the

9   consultative examination took place one year after the expiration of Plaintiff's insured status."  (Doc.

10  12 at 9.)  It is not entirely clear, however, that the ALJ predicated the treatment of Dr. McDonald's

11  opinion on the timing of her examination of Plaintiff.  The fact that the ALJ went on to consider the

12  opinion's consistency and supportability, discussed below, suggests the ALJ did not.[5]  However, even

13  assuming Plaintiff's assertion is correct, such does not constitute error.  As stated by the Ninth Circuit:

14  "We think it is clear that reports containing observations made after the period for disability are

15  relevant to assess the claimant's disability.  It is obvious that medical reports are inevitably rendered

16  retrospectively and should not be disregarded solely on that basis."  *Smith v. Bowen*, 849 F.2d 1222,

17  1225 (9th Cir. 1988) (internal citations omitted).  *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d

18  1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of . . . pre-

19  [date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832) (9th Cir. 1995) ("'[M]edical

20  evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of

21  the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225).  However, in this case, Plaintiff

22  does not establish that Dr. McDonald rendered her opinion retrospective to a period prior to Plaintiff's

23  date last insured in June 2019.  *See, e.g., Morgan v. Colvin*, No. 6:12-CV-1235-AA, 2013 WL

24  6074119, at *10 (D. Or. Nov. 13, 2013) ("[I]t is well-established that an ALJ may reject a medical

25  opinion, even that of a treating doctor, where 'it was completed . . . years after claimant's DLI and

26  was not offered as retrospective analysis.'") (citation omitted); *Capobres v. Astrue*, No. CV 1:09-682-

27

28  _____

[5] In fact, the ALJ evaluated all the medical evidence of record, including that dated after June 2019.  (*See* AR 29–31) (discussing Plaintiff's medical records from late 2019 to January 2020).)

REB, 2011 WL 1114256 (D. Idaho Mar. 25, 2011) (ALJ did not err in rejecting opinion because it was outside relevant time period and not controlling or persuasive before the DLI, nearly two and half years earlier, where the opinion was not offered as retrospective to the relevant time period).  Plaintiff points to Dr. McDonald's diagnosis of "Post-Traumatic Stress Disorder" that "appeared in childhood" (*see* AR 1593), but mere diagnosis alone is not sufficient to establish a medically determinable impairment, let alone functional limitations.  *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Moreover, Dr. McDonald did not indicate any "relation back" of Plaintiff's PTSD to any prior condition(s) or symptom(s) experienced during the relevant period.  *Cf. Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017) (where medical opinions "refer back" to the same chronic condition and symptoms discussed in his physician's opinion "from several years prior," the "fact that those opinions were issued significantly after [the plaintiff's] DLI does not undercut the weight those opinions are due").

The Court further concludes that the ALJ properly evaluated the supportability and consistency of Dr. McDonald's opinion.  As to consistency, the ALJ found Dr. McDonald's opinion that Plaintiff would have "some moderate limitations in performing mental work activities" generally inconsistent with the medical evidence during the adjudicative period, which "did not show[] any significant mental abnormalities."  (AR 25.)  Plaintiff contends that discrediting Dr. McDonald's opinion on the ground that there is a lack of support in the medical record is not sufficiently specific.  (Doc. 12 at 10–11.)  To the extent that Plaintiff relies on *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. l988), for the proposition that the ALJ must discuss the evidence supporting a conclusion with sufficient specificity, *Embrey* is distinguishable.  In *Embrey*, the ALJ concluded that the physicians' opinions of total disability were not supported "by sufficient objective findings and were contrary to the preponderant conclusions mandated by those objective findings."  *Id*. at 421.  The ALJ's reasoning indicated that there were objective factors to discuss, indeed, the ALJ listed certain findings, but failed to provide any relevant discussion how the objective findings were weighed.  *Id*.

This is distinct from a situation where, as here, the ALJ points to an absence of evidence, as opposed to referring to unspecified evidence that "preponderates" a different conclusion than that reached by the doctor.  In other words, it is essentially impossible to discuss specifics that do not exist.

*Cf. United States v. Newman*, 144 F.3d 531, 543 n. 13 (7th Cir. 1998) (noting "the difficulty in proving a negative proposition").  The Court cannot conclude that it is the ALJ's duty to imagine findings, among the world of possible findings that could theoretically have been made to support Dr. McDonald's conclusion, and then point to places in the record where those findings were ***not*** made. Plaintiff's briefing offers no findings, either.  Other than Dr. McDonald's conclusion, Plaintiff points to no evidence in the medical record indicating she is moderately limited in her ability to perform mental work abilities that the ALJ overlooked or failed to weigh, and a review of the record indicates that the only evidence that potentially relates to an impairment in Plaintiff's ability to socially function are her own subjective statements (properly discredited, as discussed below).  The ALJ cannot be faulted for failing to specifically discuss evidence that does not exist.  Under these circumstances, it is sufficient for the ALJ to state that the medical evidence does not provide support for the limitations imposed.

As to supportability, the ALJ appropriately found Dr. McDonald's opinion was "not entirely supported by her own examination findings," which showed Plaintiff's "excellent" judgment, insight, concentration, and attention, and "clear and well organized" thought process and speech.  (AR 1591–92.)   In addition, in a <u>direct</u> contradiction, Dr. McDonald on one hand opined Plaintiff was "moderately limited" in her ability to "understand and remember detailed instructions" and "accept instructions from supervisors" (AR 1594), but on the other hand found Plaintiff's ability to "understand and recall work-related instructions" was "unimpaired" (AR 1591).  Internal inconsistency in a physician's opinion is a specific and legitimate reason to find an opinion less persuasive.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion).

In sum, the Court finds that the ALJ's determination that Dr. McDonald's opinion was not persuasive is legally sufficient and supported by substantial evidence, and thus there was no error at step two.

**B.**     **The ALJ Properly Discredited Plaintiff's Testimony**

      **1.**     **Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must

engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**2.   Analysis**

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could

---

[6] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 14 at 9 n.4.)

reasonably be expected to cause the alleged symptoms." (AR 29.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 29.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Here, the ALJ found Plaintiff's statements not credible because they are inconsistent with her daily activities and inconsistent with evidence showing Plaintiff's diverticulitis symptoms were controlled with treatment. (AR 30.) The Court takes each finding in turn.

### a. Activities of Daily Living

First, the ALJ determined that Plaintiff's activities of daily living are "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 30.) As summarized by the ALJ, the record demonstrates Plaintiff prepares simple meals daily (AR 322, 380, 1567), performs "light housecleaning" (AR 322, 1567), unloads and loads the dishwasher (AR 322), folds laundry (AR 380), drives (AR 381, 725, 1567), goes out alone (323, 381, 725), shops for groceries (AR 323, 381, 1567), uses public transportation (AR 381), and can take care of self-dressing, self-bathing, and personal hygiene (AR 725).

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). In evaluating a claimant's credibility, an ALJ may also consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

The Court finds that Plaintiff's above-described activities tend to suggest that she may still be able to perform, on a sustained basis, the basic demands of the occupations identified by the ALJ at steps four and five (*see* AR 31–32). *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it

1    would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from

2    working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding

3    that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the

4    record reflected that the claimant performed normal activities of daily living, including cooking,

5    housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600

6    (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

7    occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's

8    credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made

9    an adverse credibility finding because, in part, claimant's daily activities included driving, washing

10   the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO,

11   2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints

12   of claimant who suffered from chronic back problems where claimant engaged in activities such as

13   preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies

14   2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting

15   with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes

16   at home.).

17        The record also contains some contrary evidence, such as Plaintiff's statements that ability to

18   perform household chores is hampered by pain.  (*See* AR 57, 58.)  The ALJ's decision properly

19   recognized that Plaintiff has some work limitations because of pain.  (*See* AR 27 (assessing a light

20   RFC with additional postural and manipulative limitations).)  The Court concludes, however, that the

21   ALJ properly discredited Plaintiff's testimony that her limitations render her ***completely*** unable to

22   work.  *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes

23   specific findings that are supported by the record, the adjudicator may discredit the claimant's

24   allegations based on inconsistencies in the testimony or on relevant character evidence.").  Where the

25   ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-

26   guess it.  *Rollins*, 261 F.3d at 857 (affirming ALJ's credibility determination even where the

27   claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all

28   the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

b.      Control of Symptoms

The other reason given by the ALJ for discrediting Plaintiff's subjective statements is that her "condition appeared to improve at least somewhat after her colectomy." (AR 30.) The record shows that Plaintiff underwent surgery in February 2019 to remove the diseased segment of her colon. (AR 787, 924, 952–57.) Later that month, Plaintiff reported that her diverticulitis pain was "completely resolved." (AR 925.) She reported a recurrence of pain in March 2019, but it had improved in May 2019 and was associated with constipation. (AR 962, 969.) In September 2019, Plaintiff denied any fevers, chills, nausea, vomiting, diarrhea, or constipation. (AR 1441.) As late as January 2020, Plaintiff reported that she has "no symptomatology" of her diverticulitis. (AR 1567.)

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when the record shows their symptoms are controlled. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Morgan*, 169 F.3d at 599 (ALJ's adverse credibility determination properly accounted for physician's report of improvement); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment). Here, the ALJ reasonably concluded from the record that Plaintiff's diverticulitis symptoms were "at least somewhat" controlled during the relevant period.

Plaintiff criticizes the ALJ for "fail[ing] to address Plaintiff's pre-surgical symptoms." (Doc. 12 at 14–15.) But the ALJ did discuss Plaintiff's diverticulitis symptoms she experienced prior to her surgery. (*See* AR 29 (discussing Plaintiff's "intermittent left lower quadrant pain" documented from November 2018 through January 2019).) Nevertheless, to the extent that the ALJ may have erred in discrediting Plaintiff's subjective symptom testimony partly because of symptom improvement, the error is harmless, because the ALJ cited another clear and convincing reason for their credibility determination, *infra*. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008). Thus, the ALJ did not err in finding Plaintiff's subjective symptom testimony and statements "not entirely credible."

**V.      CONCLUSION AND ORDER**

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is

therefore AFFIRMED.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **February 22, 2023**                                 /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE